**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BLUE CASTLE (CAYMAN) LTD,

                               Plaintiff,

    vs.                                       3:24-cv-220
                                                (ECC/ML)

CAROL SCHERER, SUSAN SANCHEZ,
STEVEN HINE, AARON HINE, AS HEIRS,
DISTRIBUTEES AND NEXT OF KIN
TO THE ESTATE OF MABLE G. HINE,

                               Defendants.

---

Alan H. Weinreb, Esq., *for Plaintiff*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

On February 14, 2024, Plaintiff Blue Castle (Cayman) Ltd. (Blue Castle or Plaintiff) filed this diversity action under Article 13 of the New York Real Property Actions and Proceedings Law (RPAPL), §§ 1301 *et seq.*, against Defendants Carol Scherer, Susan Sanchez, Steven Hine and Aaron Hine (collectively, Defendants), as heirs, distributees, and next of kin to the Estate of Mable G. Hine.  Complaint (Compl.), Dkt. No. 1.  Blue Castle seeks to foreclose on a Home Equity Conversion Mortgage (the mortgage), more commonly known as a reverse mortgage, encumbering 105 Conklin Forks Road, Binghamton, New York 13903 (the property).  *Id*. at ¶ 12.  The Defendants have not appeared or filed an answer to the Complaint.  Plaintiff requested and obtained an entry of default against the Defendants from the clerk under Rule 55(a) of the Federal Rules of Civil Procedure.  On July 19, 2024, Plaintiff moved for default judgment.  Dkt. No. 11.  This Court denied that motion with leave to renew on February 26, 2025.  Dkt. No. 15.  Presently

before the Court is Plaintiff's renewed motion for default judgment. Dkt. No. 18. For the reasons

set forth below, the renewed motion is denied.

## I.      BACKGROUND

### A.  The Parties

According to the Complaint, Blue Castle is a corporation organized under the laws of the

Cayman Islands with its principal place of business in Florida. Compl. ¶ 3. Mable G. Hine lived

at the property until she died on April 21, 2017. *Id.* at ¶¶ 4, 15. Defendants Carol Scherer, Susan

Sanchez, Steven Hine, and Aaron Hine are the heirs, distributees, and next of kin to the estate of

Mable G. Hine. *Id.* at ¶¶ 5–8. Defendants are all citizens of states other than the Cayman Islands

and Florida. *See id.* at ¶¶ 5, 7–8 (stating the domiciles of the parties, and identifying Sanchez's as

California); Dkt. No. 18-1 at 4–5 (arguing that at the time of the suit, Sanchez's domicile was New

York).[1]

### B.  Plaintiff's Allegations

On July 15, 2002, Albert Duane Hine and Mable G. Hine executed a Home Equity

Conversion Mortgage to M&T Mortgage Corporation to obtain $82,500 and interest. Compl. ¶ 12;

Dkt. No. 1-1 at 5, 12. The mortgage was recorded in the Broome County Clerk's Office on July

19, 2002. Compl. ¶ 12. On the same day, Albert and Mable Hine executed a note to M&T

Mortgage Corporation in the amount of $82,500 and interest. *Id*. at ¶ 13; Dkt. No. 1-1 at 15, 17.

The mortgage was assigned eight times, and Plaintiff was the last assignee on June 15, 2023.

Compl. ¶ 16; Dkt. No. 1-1 at 23–47. This last assignment was recorded with the Broome County

Clerk's Office on June 27, 2023. Compl. ¶ 16(h). The note was similarly transferred by affixation

---

[1] Unless otherwise noted, citations to page numbers refer to pagination generated by the Court's
ECF system.

of allonges and endorsements.  *Id.* at ¶ 13; Dkt. No. 1-1 at 18–21.  Plaintiff has physical possession of the original mortgage and note.  Compl. ¶ 18.

Albert Duane Hine died on January 27, 2007, and Mable G. Hine died on April 21, 2017.  Compl. ¶ 15; Dkt. No. 1-1 at 69, 70.  The mortgage states in Paragraph 9(a)(i) that "Lender may require payment in full of all sums secured by this security instrument if a borrower dies and the property is not the principal residence of at least one surviving Borrower."  *Id*. at ¶ 19; Dkt. No. 1-1 at 7.  Plaintiff alleges that the "death of Mable G. Hine, deceased borrower, triggered the right to foreclose on the mortgage premised [sic] and payment of all outstanding amounts due," Compl. ¶ 21, and Plaintiff "elects to declare the entire sum under the agreement to be due and payable," *id*. at ¶ 20.

On September 20, 2023, Plaintiff mailed a default notice to the Estate of Mable G. Hine, addressed to the property, stating that the mortgage of $153,740.98 was "technically in default due to the death of the last surviving borrower living in the principal residence" and warning of potential foreclosure action.  Compl. ¶ 22; *see* Dkt. No. 1-1 at 49–50.  The same day, Plaintiff mailed a 90-day pre-foreclosure notice, as required by RPAPL § 1304, to the Estate of Mable G. Hine at the property.  Compl. ¶ 22; Dkt. No. 1-1 at 51–53.  The Estates did not respond to these notices.  Compl. ¶ 25.

## II.    STANDARD OF REVIEW

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminer, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  First, the plaintiff must obtain a clerk's entry of default under Rule 55(a). *Id.* at 504; *see also* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter

the party's default."); Northern District of New York Local Rule (Local Rule) 55.1 (requiring a party "applying to the Clerk" for an entry of default to "submit an affidavit showing" that (1) "the party against whom it seeks a judgment" is "not an infant, in the military, or an incompetent person" and "has failed to plead or otherwise defend the action . . ." and (2) "it has properly served the pleading to which the opposing party has not responded.").

Second, the plaintiff must "apply to the court for entry of a default judgment" under Rule 55(b)(2).  *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Default judgments "are generally disfavored and are reserved for rare occasions." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Before a court enters a default judgment, it must "ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (citation and quotation marks omitted).

## III.    DISCUSSION

By failing to answer the complaint or oppose this motion, defendants are deemed to have admitted the factual allegations in the complaint.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. RealtyCorp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability. . . ."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2 (E.D.N.Y. Mar. 11, 2011) (citation and quotation marks

omitted) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."). "Still, the court must ensure the allegations provide a basis for liability and relief, and the court has discretion to require further proof of necessary facts." *Wilmington Sav. Fund Soc'y, FSB as Trustee of Aspen Holdings Tr. v. Fernandez,* 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) (citing *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)).

"The decision whether to enter default judgment is committed to the district court's discretion. . . ." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). Even where a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a district court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Indeed, the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *Id.* (alteration in original) (quoting *Finkel*, 577 F.3d at 84).

"To prevail in a mortgage foreclosure action under New York law, the plaintiff must satisfy the common law elements and the statutory requirements set forth in Article 13 of the [RPAPL]." *Fernandez*, 712 F. Supp. 3d at 333 (citing *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y. 2015)).

The Court previously identified six deficiencies in Plaintiff's first motion for default judgment. Dkt. No. 15 at 5, 8–13. First, the Complaint alleged a California address for Defendant Sanchez, but Plaintiff provided proof of service for an address in Kirkwood, New York. Plaintiff now asserts that Defendant Sanchez actually lived in Kirkwood, New York when service occurred.

5

Dkt. No. 18-1 at 4. If Plaintiff could provide additional information confirming that Sanchez's usual place of abode was at the Kirkland address at the time of service,[2] then service would be proper because the papers were hand delivered to a co-occupant of suitable age and discretion and mailed to the same address two days later. *See* Dkt. No. 18-1 at 152; Fed. R. Civ. P. 4(e)(1) ("an individual . . . may be served in a judicial district of the United States" by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"); N.Y. C.P.L.R. § 308(2) (A natural person may be served by "delivering the summons within the state to a person of suitable age and discretion at the. . . usual place of abode of the person to be served and by . . . mailing the summons to the person to be served at . . . her last known residence," with "delivery and mailing to be effected within twenty days of each other."). Given that there is a deficiency that can only be corrected by filing an amended complaint, Plaintiff must be sure that any amended complaint is properly served on all Defendants, including Sanchez.

Second, it was not clear that Sanchez was served with the notice required by RPAPL § 1303. Plaintiff has now provided a copy of the Section 1303 notice served on Sanchez, and assuming that service of process was proper, this too was proper. Dkt. No. 18-1 at 153. As discussed below, however, if Plaintiff files an amended complaint, Plaintiff must be sure that all Defendants, including Sanchez, are properly served with the Section 1303 notice.

Third, Plaintiff did not make an affirmative allegation that it "complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules or regulations

---

[2] In support, Plaintiff relies on a report stating that Sanchez lived in Kirkwood, *see* Dkt. No. 18-1 at 4–5, 157, but that report states that Sanchez lived there until March 2024, and she was not served until May 2024, Dkt. No. 18-1 at 152. Plaintiff also relies on a process server's statement that Sanchez's California neighbors stated "that she had relocated to New York," Dkt. No. 18-1 at 5.

promulgated thereunder" as required by RPAPL § 1302(1)(b).   Plaintiff now affirms in a declaration from counsel "that it has complied with . . . all provisions of Banking Law §595-a and any rules and regulations promulgated thereunder." Dkt. No. 18-1 at 3.  However, to address this deficiency the Plaintiff must make this affirmative allegation in the complaint.  *See* RPAPL § 1302(1)(b) ("Any *complaint* served in a proceeding initiated on a residential mortgage covering a one to four family dwelling pursuant to this article must contain an affirmative allegation that at the time the proceeding is commenced, the plaintiff . . . has complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules and regulations promulgated thereunder. . . .") (emphasis added).  Therefore, Plaintiff must amend the complaint to fix this deficiency.

Fourth, Plaintiff did not sufficiently affirm that it filed the Complaint with the Broome County Clerk's Office before or at the same time as filing its notice of pendency.  Plaintiff has now affirmed that it filed the Complaint with the Broome County Clerk's Office before or at the same time as filing its notice of pendency by filing the notice of pendency one day after the Complaint. Dkt. No. 18-1 at 4, 128; *Wilmington Sav. Fund Soc'y, FSB as Tr. of Aspen Holdings Tr. v. Bernash*, No. 1:23-cv-485 (AMN/DJS), 2024 WL 1285431, at *5 (N.D.N.Y. Mar. 26, 2024); RPAPL § 1331; N.Y. C.P.L.R. § 6511(a).

Fifth, Plaintiff's allegations of damages were inconsistent across its pleadings and Plaintiff's proposed judgment of foreclosure and sale order did not identify a referee.  Plaintiff's proposed judgment of foreclosure now identifies a referee, and Plaintiff has explained the inconsistencies. Dkt. No. 18-3 at 2.

7

Finally, in the context of the damages analysis, it was not clear whether, how, or when the mortgage debt was accelerated or whether the statute of limitations affected the damages calculation.  In Plaintiff's Memorandum of Law in support of the pending motion, Plaintiff wrote:

> Plaintiff's claims are timely. Plaintiff did not elect to accelerate the loan. Rather, the cause of action arose upon the death of Borrower Mable G. Hine, and the debt matured by its terms in accordance with paragraph 9(a)(i) of the Mortgage. Plaintiff's claims seek enforcement of the entire mortgage debt that became due upon the Borrower's death and maturity of the loan, as opposed to recovery based on missed installment payments. Accordingly, the statute of limitations had not expired when this action was commenced on February 14, 2024.

Dkt. No. 18-2 at 3.[3]  Paragraph 9(a)(i) of the mortgage instrument, "Grounds for Acceleration of Debt," states that if the borrower dies and no remaining borrowers live at the mortgaged property, then lender "may require immediate payment in full" of all mortgage debt.  *See* Compl. ¶¶ 14, 19; Dkt. No. 1-1 at 7.  These representations are not sufficient to resolve these issues.

Plaintiff identifies Hine's April 21, 2017 death as the event that caused "the entire mortgage debt" to become "due." Compl. ¶ 15; Dkt. No. 18-2 at 3.  Plaintiff does not, however, label this as an acceleration.  In addition, Plaintiff filed this action on February 14, 2024, more than six years after Hine's death.  *See* Compl. ¶ 15.  Under New York law "an action to foreclose on a mortgage is subject to a six-year statute of limitations." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) (citing N.Y. C.P.L.R. § 213(4)).  If the debt was accelerated or otherwise came due in its entirety with Hine's death, then this action is not timely.  If Plaintiff instead accelerated the debt by filing this action, *see Reverse Mortg. Sols., Inc. v. Fattizzo*, 172 A.D.3d 768, 770 (2d Dep't 2019) (noting that a plaintiff may accelerate a mortgage debt by filing a complaint in a case

---

[3] This is consistent with Plaintiff's counsel's declaration that: "Plaintiff did not elect to accelerate the subject loan.  Rather, the default arises from the death of Borrower Mable G. Hine, as provided under paragraph 9(a)(i) of the Mortgage, triggering maturity and payment in full.  The foreclosure action is based on the maturity of the debt, and the statute of limitations has not expired." Dkt. No. 18-1 at 5.

with an optional-acceleration-upon-death clause), then Plaintiff must explain why payments that came due more than six years before the Complaint was filed are timely and therefore may be collected, *see Wells Fargo Bank, N.A. v. Cohen*, 80 A.D.3d 753, 754 (2d Dep't 2011) ("Accordingly, even though the last payment on the subject mortgage was June 2000, and this action was not commenced until June 2008, the entire action is not time-barred. Instead . . . in the event that it prevailed in this action, [plaintiff's] recovery would be limited to only those unpaid installments which accrued within the six-year period of limitations preceding its June 2008 commencement of this foreclosure action. . . ."); *NDF1, LLC v. Cunningham*, No. 24-cv-00002, 2025 WL 3295069, at *8 (E.D.N.Y. Nov. 26, 2025) ("[P]laintiff concedes that it may not recover for the interest installments due more than six years prior to this action . . . [i]nstead, plaintiff states that it is seeking to recover amounts 'within the applicable statute of limitations period,' including the unpaid principal balance of the Loan which came due—and triggered the statute of limitations—when plaintiff accelerated the Loan by commencing this action.").

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion, Dkt. No. 18, is **DENIED**; it is further

**ORDERED** that unless Plaintiff amends its complaint within 30 days, this action is to be dismissed without prejudice; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 17, 2026

Elizabeth C. Coombe
U.S. District Judge

9