**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BLUE CASTLE (CAYMAN) LTD,

Plaintiff,

v.

CAROL SCHERER, SUSAN SANCHEZ, STEVEN HINE, and AARON HINE, as heirs, distributees and next of kin to the Estate of Mable G. Hine,

Defendants.

3:24-cv-220 (ECC/ML)

---

Alan H. Weinreb, Esq., *for Plaintiff*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Blue Castle (Cayman) LTD brings this diversity action pursuant to Article 13 of the New York Real Property Actions and Proceedings Law, seeking to foreclose on a Home Equity Conversion Mortgage (the mortgage) encumbering 105 Conklin Forks Road, Binghamton, New York 13903 (the property). *See* Dkt. No. 22 (amended complaint). Defendants Carol Scherer, Susan Sanchez, Steven Hine, and Aaron Hine, as heirs, distributees, and next of kin to the Estate of Mable G. Hine, have failed to answer the amended complaint or otherwise appear in this action. Presently before the Court are Plaintiff's motion to appoint a receiver, Dkt. No. 25, and Plaintiff's second renewed motion for default judgment and judgment of foreclosure and sale, Dkt. No. 36. For the following reasons, Plaintiff's motions are denied.

## I. BACKGROUND

On February 26, 2025, the Court issued a Memorandum-Decision and Order denying Plaintiff's motion for default judgment with leave to renew. Dkt. No. 15. On March 17, 2026, the

Court issued a Memorandum-Decision and Order denying Plaintiff's renewed motion for default judgment but allowing Plaintiff to file an amended complaint to cure certain identified deficiencies. Dkt. No. 21. Plaintiff filed the amended complaint on April 8, 2026 and a second renewed motion for default judgment on June 25, 2026. Dkt. Nos. 22, 36. Plaintiff also moved for the appointment of a receiver to "secure, maintain, and preserve" the property. Dkt. No. 25. The Court presumes familiarity with its prior decisions and recounts only those facts necessary to its decision on the present motions.

**A. The Parties**

According to the amended complaint, Plaintiff is a corporation organized under the laws of the Cayman Islands with its principal place of business in Florida. Dkt. No. 22 ¶ 3. Defendants Carol Scherer, Susan Sanchez, Steven Hine, and Aaron Hine are the heirs, distributees, and next of kin to the estate of Mable G. Hine. *Id.* at ¶¶ 5-8. Defendants are all citizens of states other than the Cayman Islands and Florida. *See id.* at ¶¶ 5, 7-8 (alleging that Scherer, Steven Hine, and Aaron Hine are citizens of New York); *id.* at ¶ 6 (alleging that Sanchez is a citizen of a state other than Florida and the Cayman Islands and that Sanchez currently dwells in New York).

**B. Plaintiff's Allegations**

On July 15, 2002, Albert Duane Hine and Mable G. Hine executed a Home Equity Conversion Mortgage, more commonly known as a reverse mortgage, to M&T Mortgage Corporation to secure a principal sum of up to $82,500 and interest. Dkt. No. 22 ¶ 12; Dkt. No. 22-1 at 5, 12.[1] On the same day, Albert and Mable Hine executed a note to M&T Mortgage Corporation in the amount of $82,500 and interest. *Id.* at ¶ 13; Dkt. No. 22-1 at 15, 17. Plaintiff is

[1] Unless otherwise noted, citations to page numbers refer to pagination generated by the Court's ECF system.

the present assignee of the mortgage and has physical possession of the original mortgage and note. *See id.* at ¶¶ 16-18.

Albert Duane Hine died on January 27, 2007, and Mable G. Hine died on April 21, 2017. *Id.* at ¶ 15; Dkt. No. 22-1 at 69, 70. Paragraph 9(a)(i) of the mortgage provides: "Lender may require immediate payment in full of all sums secured by this Security Instrument if (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower." Dkt. No. 22-1 at 7; Dkt. No. 22 ¶ 19. Plaintiff alleges that Ms. Hine's death, coupled with the failure of any surviving borrower to occupy the property as a principal residence, permitted the lender to "require immediate payment in full of all sums secured thereby," a right which Plaintiff elected to exercise by commencing this action on February 14, 2024. Dkt. No. 22 ¶¶ 19-20.

On September 20, 2023, Plaintiff sent a default notice to the Estate of Mable G. Hine, addressed to the property, stating that the mortgage in the amount of $153,740.98 was "technically in default due to the death of the last surviving borrower living in the principal residence" and warning of potential foreclosure action. *Id.* at ¶ 22; *see* Dkt. No. 22-1 at 49-50.

## II. DISCUSSION

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure articulates the process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default. *See id.*; *see also* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This step is not discretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, the plaintiff may apply to the Court for a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

Default judgments are "generally disfavored" because of the Second Circuit's "oft-stated preference for resolving disputes on the merits." *Enron Oil*, 10 F.3d at 95-96. "The decision whether to enter default judgment is committed to the district court's discretion . . . ." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). When considering a default judgment motion, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Doe v. Rees*, No. 24-cv-274 (MAD/ML), 2025 WL 834786, at *4 (N.D.N.Y. Mar. 17, 2025) (quoting *LaBarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted)); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (citation omitted).

### B. Entry of Default Judgment

On May 27, 2026, Plaintiff requested an entry of default from the clerk under Rule 55(a) after Defendants failed to respond to the amended complaint. Dkt. No. 30. As required by Fed. R. Civ. P. 55(a) and Local Rule 55.1, Plaintiff included an affirmation stating the Defendants (1) are not infants, in the military, or incompetent persons, (2) failed to plead or otherwise defend this action, and (3) were properly served with the amended complaint. *Id.*; *see* Dkt. Nos. 26-29 (affidavits of service). On May 28, 2026, the Clerk entered Defendants' default. Dkt. Nos. 31-34.

Plaintiff has met the procedural requirements and is entitled to an order of default under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

**C. Discussion**

In ruling on Plaintiff's prior motions for default judgment, the Court raised the statute of limitations and questioned whether Plaintiff's foreclosure action was timely. *See* Dkt. No. 15 at 12-13 (directing Plaintiff to address the statute of limitations in any renewed motion for default judgment); Dkt. No. 21 at 8-9 (noting that if the debt "came due in its entirety with Hine's death, then this action is not timely"); *see also Williams v. Kelsey*, No. 25-cv-1968, 2026 WL 2936982, at *4 (E.D.N.Y. Sept. 30, 2026) (noting that courts sometimes raise a statute of limitations defense in the context of a default judgment motion "if the facts supporting the limitations defense are clear on the face of the complaint") (citation omitted).

"In New York, an action to foreclose on a mortgage is subject to a six-year statute of limitations." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) (citing CPLR § 213(4)). It is undisputed here that Plaintiff commenced this action on February 14, 2024, more than six years after Ms. Hine's death in 2017. Plaintiff nonetheless argues that its foreclosure action is timely because Section 9(a)(i) of the mortgage provides that the lender "*may* require immediate payment in full" if a borrower dies and the property is not the principal residence of at least one surviving borrower. Dkt. No. 22-1 at 7 (emphasis added); Dkt. No. 36-2 at 5-6. Plaintiff argues that the death of the last surviving borrower "did not itself accelerate the debt" but only created Plaintiff's "contractual right to elect acceleration," which Plaintiff exercised by commencing this foreclosure action in 2024. Dkt. No. 36-2 at 5-6.

The Court disagrees. Plaintiff relies on *Reverse Mortgage Solutions, Inc. v. Fattizzo*, in which the Second Department concluded that a loan secured by a reverse mortgage "did not automatically become due and payable upon the death of the borrower" because the lender "had the option, but was not required, to accelerate the debt" at that time. 172 A.D.3d 768, 769-70 (2d Dep't 2020). Because the lender in that case "did not take an affirmative act to accelerate the

borrower's debt" until it filed a summons and complaint, the statute of limitations did not begin to run until commencement of suit. *Id.* at 770.

The reasoning in *Fattizzo*, which appears to conflate a reverse mortgage with a traditional mortgage requiring installment payments, is not persuasive and has been rejected by other Departments of the Appellate Division. In *Reverse Mortgage Solutions, Inc. v. Miglucci*, the Third Department affirmed the dismissal of a foreclosure complaint as untimely where the complaint was filed more than six years after the borrower's death. 231 A.D.3d 1342 (3d Dep't 2024). As Plaintiff does here, the lender in *Miglucci* argued that the "permissive language contained in the mortgage is controlling and that, based on its terms, the statute of limitations was not triggered until plaintiff filed its complaint." *Id.* at 1343. The Third Department rejected this argument, noting that a cause of action seeking a payment of money pursuant to a contract accrues "when the party making the claim possesses a legal right to demand payment . . . , not when it actually made the demand." *Id.* (citations omitted). The Third Department noted that the interpretation advanced by the lender "would permit the indefinite extension of the statute of limitations subject only to [the lender's] discretion." *Id.*; *see also Bank of Am., N.A. v. Gulnick*, 170 A.D.3d 1365, 1366 (3d Dep't 2019) (holding that cause of action to foreclose on reverse mortgage accrued on borrower's death, and noting that a rule "providing that a cause of action accrues only when a demand is made would permit a plaintiff 'to extend the statute of limitations indefinitely by simply failing to make a demand'") (citations omitted). The Fourth Department has likewise recognized that the "triggering event" for the statute of limitations on a reverse mortgage "generally involves the death of the borrower or the sale of the home." *See Wendover Fin. Servs. v. Ridgeway*, 137 A.D.3d 1718, 1718-19 (4th Dep't 2016) (citation omitted).

Although it appears that the New York Court of Appeals has not directly confronted this issue, the Court finds the reasoning of the Third Department (where the property at issue here is located) persuasive. Because the statute of limitations to commence a foreclosure action on the reverse mortgage here began to run on Ms. Hine's death, Plaintiff's foreclosure action which was commenced more than six years later is untimely.

Accordingly, Plaintiff's second renewed motion for default judgment is denied and the Court *sua sponte* dismisses Plaintiff's foreclosure action as untimely. *See Wright v. Rensselaer Cnty. Jail*, 771 F. App'x 58, 59 (2d Cir. 2019) (summary order) ("While untimeliness is an affirmative defense, a district can *sua sponte* dismiss untimely claims where the defense is apparent on the face of the complaint.") Plaintiff's motion to appoint a receiver is therefore also denied.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to appoint a receiver, Dkt. No. 25, is **DENIED**; and it is further

**ORDERED** that Plaintiff's second renewed motion for default judgment, Dkt. No. 36, is **DENIED** and the amended complaint is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this action; and it is further

**ORDERED** that Plaintiff shall serve a copy of this Memorandum-Decision and Order on Defendants by regular mail at Defendants' last known addresses and file a certificate of service upon completion of such service.

**IT IS SO ORDERED.**

Dated: November 16, 2026

Elizabeth C. Coombe
U.S. District Judge